O

# United States District Court
# Central District of California

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND; and BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>    Plaintiffs,<br>  v.<br>THE KUTZTOWN PUBLISHING CO., INC.,<br><br>    Defendant. | Case No. 2:15-cv-08712-ODW-AFM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [14]** |

## I. INTRODUCTION

Plaintiffs GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund (collectively "GCIU") bring this action against Defendant Kutztown Publishing Co., Inc. under the Employee Retirement Income Security Act of 1974 ("ERISA"). GCIU alleges that Defendant failed to make payments on a withdrawal liability assessment as required under ERISA. The Clerk of Court entered a default against Defendant on December 15, 2015. (ECF No. 11.) On February 8, 2016, GCIU filed the present Motion for Default Judgment. (ECF No. 14.) In its Motion, GCIU ask the Court to enter judgment on its claim for withdrawal liability in the amount of $3,498,657 in damages, $96,884.05 in prejudgment interest,

$75,510.83 in attorneys' fees, and $650.85 in costs. (Mot. 5.) For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion for Default Judgment against Defendant Kutztown Publishing Co.

## II. FACTUAL BACKGROUND

GCIU is a multiemployer pension plan within the meaning of ERISA. (Compl. ¶ 4.) Pursuant to Defendant's collective bargaining agreement with its employees' labor union, Defendant was required to contribute to a retirement fund that was administered by GCIU. (*Id*. ¶ 10.) In 2013, Defendant withdrew from participation in the retirement fund. (*Id*. ¶ 11.)

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") imposes liability on employers that withdraw from an underfunded multiemployer pension plan. Thus, on December 9, 2014, GCIU sent Defendant a notice of complete withdrawal liability and demand for payment in the amount of $3,498,657. (*Id*. ¶ 12.) The demand also provided Defendant with two payment options: (1) a one-time lump-sum payment of $722,817; or (2) 240 monthly payments of $3,984.24. (*Id*. ¶ 13.) After Defendant failed to timely challenge the amount assessed, GCIU sent Defendant a notice of failure to pay withdrawal liability and demand for cure on July 30, 2015. (*Id*. ¶¶ 14–15.) Defendant still failed to make any payments. (*Id*. ¶ 17.)

On November 11, 2015, GCIU filed the present Complaint against Defendant under 29 U.S.C. § 1381. (*Id*.) GCIU asserts that it is entitled to $3,498,657 for past due withdrawal liability payments, prejudgment interest, and reasonable attorneys' fees and costs of the action. (*See id.* at 4.) After Defendant failed to respond to the Complaint, the Clerk of Court entered a default against Defendant. (ECF No. 11.) GCIU subsequently filed the present Motion for Default Judgment. (Mot.) GCIU's Motion is now before the Court for decision.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a). *Aldabe v. Aldabe*,

616 F.2d 1089, 1092 (9th Cir. 1980). Upon entry of default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party the default was entered; (2) identification of the pleading to which the default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice if required. *Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

GCIU has satisfied these requirements. The Clerk entered a default against Defendant on the Complaint on December 15, 2015. (ECF No. 11.) Plaintiff's counsel declared on information and belief that Defendant is not a natural person, and therefore not a minor, an incompetent person, or active service member. (Knore Decl. ¶ 3, ECF No. 14-1.) Service on Defendant was not required because Defendant never appeared in the action. Fed. R. Civ. P. 55(b)(2). Finally, GCIU has complied with

Federal Rule of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint. GCIU has thus complied with the procedural prerequisites for entry of default judgment.

**B.** *Eitel* **Factors**

The Court finds that the *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

### 1. Plaintiffs Would Suffer Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor favors entering a default judgment because Defendant has failed to appear or offer a defense in this case; therefore the only way GCIU can obtain relief is through a default judgment.

### 2. Plaintiff Brought a Meritorious Claim and GCIU's Complaint Was Adequately Pleaded

The second and third factors, the merits of GCIU's substantive claim and sufficiency of the Complaint, also support entry of a default judgment. These factors require plaintiffs to "state a claim upon which they may recover." *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

GCIU alleges that Defendant is liable for its complete withdrawal from the fund. "An employer [that] withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal . . . is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). A complete withdrawal from a multiemployer plan occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." *Id.* § 1383(a). Once the fund has determined that the employer has withdrawn from the fund, the fund must send the employer a notice of withdrawal liability, an assessment of the amount owed, and a demand for payment according to a schedule. 29 U.S.C. § 1399(b)(1). If the employer does not timely

challenge the fund's calculation, "the amounts demanded by the plan sponsor under [§ 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in State or Federal court of competent jurisdiction for collection." *Id.* § 1401(b)(1).

All of these requirements were satisfied. Defendant's obligation to contribute to the GCIU retirement fund ceased in 2013 because Defendant completely withdrew from participation. (Compl. ¶ 11.) GCIU assessed the liability against Defendant and demanded payment of either one lump-sum payment of $722,817, or 240 monthly payments of $3,984.24. (*Id.* Ex. 3.) Defendant did not make any payments and did not dispute GCIU's demand. (*Id.* ¶¶ 14–17.) Thus, GCIU's assessment is binding on Defendant under 29 U.S.C. § 1401(b)(1). *See N. Cal. Glaziers Architectural, Metal & Glassworkers Pension Trust v. Architectural Glass Const., Inc.*, No. C 08-05018 WHA, 2009 WL 3721344, at *4 (N.D. Cal. Nov. 5, 2009) (holding that if an employer fails to make payment when due, and fails to cure the delinquency within 60 days of the notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability). Accordingly, the second and third *Eitel* factors support granting default judgment.

### 3. The Amount at Stake Weighs in Favor of Default Judgment

The fourth factor balances the sum of money at stake "in relation to the seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). GCIU seeks a total judgment award of $3,671,702.73 in withdrawal liability, interest, attorneys' fees, and costs. (Mot. ¶¶ 19–20.)

The damages requested by GCIU are in line with the parameters set forth under

§ 1132(g)(2). Defendant's withdrawal liability of $3,498,657 was calculated based upon the statutory formulas provided in 29 U.S.C. § 1391. (Knore Decl., Ex. 3.) GCIU additionally seeks interest on the withdrawal liability in the amount of $96,884.05 pursuant to 29 U.S.C. § 1399(c)(6), attorneys' fees in the amount of $75,510.83, and costs associated with bringing this action in the amount of $650.85. (Mot. ¶¶ 11–20.) Given that GCIU's damages are set by statute, there is little concern that the judgment is disproportionate to Defendant's conduct.

### 4. There is Little Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72. The issues in this case are straightforward: did Defendant withdraw from the fund, did GCIU send proper notice to Defendant of the amount of withdrawal liability owed. *See Auto. Indus. Pension Trust Fund v. Bi-City Paint & Body Co.*, No. C 12-01972 LB, 2012 WL 6799735, at *5 (N.D. Cal. Dec. 6, 2012). "Given that the issues are easily ascertainable, the possibility for substantial fact disputes seems unlikely." *Id.*

Following Defendant's withdrawal from the Fund, GCIU notified Defendant of its withdrawal liability and provided Defendant with a payment schedule in accordance with ERISA. (Mot. 4.) Defendant did not challenge the amount of the withdrawal liability assessment, and did not make any withdrawal liability payments. (*Id.* 5.) On these facts, GCIU is entitled to collect the assessed withdrawal liability pursuant to 29 U.S.C. § 1399(c)(5). Defendant's failure to appear to contest this lawsuit also tends to suggest that it also did not timely contest the withdrawal liability assessment or make payments on the assessment. Thus, the possibility for substantial disputes seems unlikely. This factor, therefore, favors the entry of default judgment against Defendant.

### 5. There is Little Possibility Default was Due to Excusable Neglect

Defendant's default does not appear to be a result of excusable neglect. There is little possibility of excusable neglect and default judgment is favored when the

defendant fails to respond after being properly served. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (default judgment is favored when defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit). Here, Defendant was properly served with the Complaint on November 13, 2015. (ECF No. 9.) However, Defendant failed to respond or appear before this Court. Accordingly, the sixth *Eitel* factor favors default judgment.

### 6. Policy for Deciding on the Merits Weighs

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where, as in the case at bar, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendant failed to respond to GCIU's Complaint, the Court finds that the seventh *Eitel* factor does not preclude entry of a default judgment.

## C. Amount of Plaintiff's Recovery

After determining liability, the Court must then calculate the amount of damages that should be awarded. *Wecosign*, 845 F. Supp. 2d at 1078. While for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

### 1. Withdrawal Liability

Under 29 U.S.C. § 1399, the amount of a withdrawing employer's liability is first computed by the fund, typically with the assistance of an actuary. ERISA "sets forth two methods [for calculating withdrawal liability]: (a) payment in a lump sum; and (b) payment in installments." *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 418 (1995). When calculating installment payments, "the statute fixes the amount of each payment and asks how many such payments there will have to be." *Id.* Thus, the fund initially makes two calculations: the amount of Defendant's *total* withdrawal liability, and the amount of the monthly

payments it is required to make. From that, the fund can then calculate how *many* monthly payments must be made. Here, GCIU calculated Defendant's total withdrawal liability at $3,498,657.00, and its monthly payments at $3,984.24.[1] Based on that, Defendants would be required to make monthly payments of $3,984.24 for approximately 73 years before paid off the total amount of withdrawal liability.

However, ERISA also limits withdrawal liability to 20 years' worth of installment payments, regardless of the total withdrawal liability assessed. *See* 29 U.S.C. § 1399(c)(1)(A). As a result, because Defendant needed to make monthly payments of $3,984.24 for only 20 years instead of 73 years, Defendant was effectively liable for only $956,217. Based on this, GCIU also gave Defendant an option to make one lump-sum payment of $722,817, which reflects the present-day value of $956,217.

Despite ERISA's 20-year cap, however, the pension fund trust agreement provides: "In the event of default, the Board of Trustees may require payment of the total outstanding amount of the employer's withdrawal liability determined without regard to the 20-year payment limitation under [29 U.S.C. § 1399(c)(1)(A)]." (Knore Decl. Ex. 3.) The Ninth Circuit has held that such trust agreements are binding on the employer, even if the employer is not a signatory to the agreement. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990). Thus, because Defendant defaulted on the withdrawal liability payments, Defendant is now entitled to the full $3,498,657.00.

///

### 2. Prejudgment Interest

---

[1] Courts do not conduct an independent calculation of a defendant's withdrawal liability where such liability was assessed by an actuary. *See Pension Trust Fund for Operating Eng'rs v. Kickin Enters.*, No. C-11-03685 JCS, 2012 WL 6711557, at *7 (N.D. Cal. Dec. 20, 2012); *Auto. Indus. Pension Trust Fund v. Good Chevrolet*, No. C-11-1381-EDL, 2011 WL 6217097, at *2 (N.D. Cal. Nov. 23, 2011), *report and recommendation adopted*, No. C 11-01381 SI, 2011 WL 6217088 (N.D. Cal. Dec. 14, 2011); *Bd. Of Trustees of Carpenter Trust Fund for N. Cal v. JKJ, Inc.*, No C 09-0636 PJH, 2010 WL 373819, at *7 (N.D. Cal. Jan. 29, 2010).

GCIU also seeks prejudgment interest in the amount of $96,884.05. (Mot. 11–12.) This amount is calculated from February 7, 2015, the date that Defendant's withdrawal liability payment was due, through December 15, 2015, the date the Clerk of Court entered a default against Defendant in this action. (Knore Decl. ¶ 13.) Section 1399(c)(6) provides that interest on withdrawal liability "shall be charged at rates based on prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation." Pursuant to GCIU's withdrawal liability procedures, prejudgment interest is calculated and assessed by its administrative office "for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day of the month preceding the beginning of each calendar quarter as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15." (*Id.* ¶ 14.) Between February 7, 2015 and December 15, 2015, the average quoted prime rate on short-term commercial loans was at 3.25%. (*Id.* ¶ 15.) GCIU's withdrawal liability procedures calculates interest "by multiplying the defaulted . . . amount by (a) for each full calendar quarter in the period from the due date to the date paid, one-fifth of the annual rate in effect for that quarter; (b) for each full calendar month in a partial quarter in that period, one-twelfth of the annual rate in effect for that quarter; and (c) for each day in a partial month in period, one-three-hundred-sixtieth of annual rate in effect for that month." (*Id.* ¶ 14; *Id.* Ex. 3, 6.) As such, the principal, $3,498,657.00, is multiplied by .0325 (the annual interest rate), and then multiplied by 0.8520547945205479 (the fraction of one year that represents the time period from February 7, 2015 to December 15, 2015). Thus, GCIU correctly calculated prejudgment interest at $96,884.05. (*Id.* ¶¶ 16–17.)

### 3. Attorney's Fees and Costs

Finally, GCIU requests attorneys' fees and costs. Attorneys' fees for default judgments are set by Local Rule 55-3. When a promissory note, contract, or applicable statute provides for the recovery of reasonable attorneys' fees in judgments

...

over $100,000.00, the court must set attorneys' fees at $5,600.00 plus 2% of the amount over $100,000.00 that is awarded. Because the applicable ERISA statute, 29 U.S.C. § 1132(g)(2)(D), provides for the recovery of attorney's fees and costs of the action, the Court will award such fees and costs in accordance with the Local Rules.

Here, the total judgment exceeds $100,000.00, and thus the Court will award GCIU $5,600.00 plus 2% of the award over the $100,000.00 minimum. C.D. Cal. R. 55-3. Therefore, the Court awards GCIU $75,510.83 in fees ($5,600.00 + $69,910.83).

GCIU also seeks to recover $650.85 in costs. (Mot. 12.) As the prevailing party, GCIU is entitled to costs as set forth in 29 U.S.C. 1132(g)(2)(D). GCIU provides evidence of various costs incurred in the present case. (*See* Knore Decl. Ex. 4.) The $400 court filing fee that GCIU was charged is recoverable as a "cost" under Local Rule 54-3.1. Fees for service of process in the amount of $149.95 are also recoverable as "costs" under Local Rule 54-3.2. However, fees associated with delivering court documents are not considered "costs" pursuant to the Local Rules, and thus are not awarded. *See* C.D. Cal. R. 54-3. Accordingly, the Court awards GCIU $549.95 in costs.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** GCIU's Application for Default Judgment. Upon entry of judgment, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

May 6, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**